# United States District Court, Northern District of Illinois  ORIGINAL

| Name of Assigned Judge or Magistrate Judge | Morton Denlow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 4335 | **DATE** | 12/21/2000 |
| **CASE TITLE** | Nolan, et al. vs. City of Chicago. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order on the liability issues raised in a trial on the papers on Counts I, II, III and VII of Plaintiffs' Fifth Amended Complaint.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| ✓ | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | DEC 2 2 2000 | |
| | Docketing to mail notices. | docketing deputy initials | |
| | Mail AO 450 form. | 12/18/2000 | |
| | Copy to judge/magistrate judge. | date mailed notice | |
| DK | courtroom deputy's initials | DK mailing deputy initials | Document Number 45 |
| | Date/time received in central Clerk's Office | | |

DEC 21 PM 4: 42

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

WILLIAM J. NOLAN, FRANCIS A. )
VALADEZ, RICHARD PALADINO, )
LAWRENCE CLARK, ROBERT )
DOYLE, JOHN DOE, JANE SMITH, )
and JOHN JONES, individually, and )    **No. 98 C 4335**
on behalf of all similarly situated )
individuals, and FRATERNAL )    **Magistrate Judge Morton Denlow**
ORDER OF POLICE, CHICAGO )
LODGE NO. 7, )
    )
    **Plaintiffs,**    )
    )
    v.    )
    )
CITY OF CHICAGO, a municipal )
corporation, )
    )
    **Defendant.**    )

DOCKETED
DEC 2 2 2000

## MEMORANDUM OPINION AND ORDER

This case presents significant issues under the Fair Labor Standards Act ("FLSA" or

the "Act") arising out of a claim by the plaintiff police officers ("Plaintiffs" or "Officers")

that the defendant City of Chicago ("Defendant" or "City") failed to properly calculate and

pay overtime. This case comes before the Court by means of a trial on the papers in which

the parties have submitted stipulated facts, trial briefs, affidavits, deposition excerpts, and

supporting exhibits which constitute the record in this case. *See* Morton Denlow, *Trial on*

*the Papers: An Alternative to Cross-Motions for Summary Judgment,* Federal Lawyer,

August 1999, at p. 30. *See also, May v. Evansville-Vanderburgh Sch. Corp.,* 787 F.2d 1105,

1115-16 (7th Cir. 1986); *Allen v. United Mine Workers of America,* 726 F.2d 352, 353 (7th Cir. 1984); *Acuff-Rose Music Inc. v. Jostens, Inc.,* 155 F.3d 140, 142 (2nd Cir. 1998). The parties have agreed to proceed in this manner and to waive their right to present oral testimony on the liability issues herein presented.[1] Oral argument was held on December 12, 2000.

The issues presented arise out of Counts I, II, III and VII of Plaintiffs' Fifth Amended Complaint.[2] Counts I, II, and VII relate to the manner in which the City calculated the FLSA overtime rate for Officers prior to January 1, 1998. Count I alleges the City underpaid Officers for overtime due under the FLSA[3] by failing to include duty availability payments in the calculation of the regular pay from which overtime payments are derived.[4] The City agrees it failed to include the duty availability payments in the calculations. The City's

---

[1]Ordinary violations of the FLSA are subject to the general two-year statute of limitations. A three-year statute of limitations applies where the employer's conduct was willful. *McLaughlin v. Richland Shoe Company,* 486 U.S. 128, 135, 108 S. Ct. 1677, 1682 (1988). An employer may be liable for liquidated damages unless the employer was acting in good faith and reasonably believed that its conduct was consistent with the law. 29 U.S.C. § 260; *Shea v. Galaxie Lumber & Construction Co., Ltd.,* 152 F.3d 729, 733 (7th Cir. 1998). These issues have been deferred for later ruling in connection with possible damages.

[2]Counts IV, V and VI are in the process of being resolved through settlement negotiations or collective bargaining.

[3]The FLSA requires that police officers receive overtime wages (time and one-half their regular rate) or compensatory time for hours worked over 171 during a 28-day period. *29 U.S.C. § 207(k);29 C.F.R. § 553.201.*

[4]The original complaint also alleged the Officers' uniform allowance should be included in the calculation of the regular rate. The Plaintiffs subsequently withdrew this portion of the claim.

defense is that it is entitled to a full credit for the overtime which it paid under the parties' collective bargaining agreement ("CBA"). Count II alleges the City failed to include holiday hours in determining whether Plaintiffs had reached the 171 hour FLSA threshold. Count III alleges the City failed to include hours worked by Officers in a voluntary special employment program towards the FLSA overtime threshold. Count VII alleges the City underpaid Officers by failing to include the duty availability allowance in its computations when "cashing out" compensatory time received for overtime. The Court will first discuss the issues related to Counts I, II and VII and then discuss the issues related to Count III.

The following constitute the Court's findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure. To the extent certain findings may be deemed to be conclusions of law, they shall also be considered conclusions. Similarly, to the extent matters contained in the conclusions of law may be deemed to be findings of fact, they shall be considered findings.

## I. FINDINGS OF FACT

### A.  Collective Bargaining Agreement.

1. Plaintiffs are present or former police officers in the Chicago Police Department ("CPD").

2. The City of Chicago is a municipal corporation organized and operating under the laws of the State of Illinois. The Chicago Police Department is an executive department of the City of Chicago created and operating pursuant to section 2-84-040 *et seq.,* of the

3

Municipal Code of Chicago. Section 2-84-040 of the Municipal Code established the office of the Superintendent of the CPD as the chief executive officer of the department. The Superintendent is authorized to act pursuant to section 2-84-040 and other sections of the ordinance. The City is an employer under the FLSA. 29 U.S.C. § 203(d). (Stip. ¶ 9).

3. Under the authority of the Illinois Public Labor Relations Act, the Fraternal Order of Police, Lodge No. 7 ("FOP") is the sole and exclusive collective bargaining representative for all sworn police officers below the rank of sergeant, excluding probationary officers, employed by the CPD in matters concerning wages, hours, and other terms and conditions of employment. (Stip. ¶ 10).

4. The City and the FOP have been parties to a collective bargaining agreement ("CBA") since 1981. (Comp. and Ans. ¶ 12).[5] At all relevant times, under the CBA, police officers were compensated at the rate of at least time and one-half for hours worked in excess of an officer's regular "tour of duty." In some instances, compensation was more than time and one-half, due to negotiated sections of the CBA. (Stip. ¶ 1).

5. The CBA provides for an annual salary based on pay grade and longevity. (CBA, App. A, pp. 112-113).

---

[5] "Comp." refers to Plaintiffs' Fifth Amended Complaint and "Ans." refers to the answer thereto.

4

**B.    Computation of Overtime Rate of Pay and FLSA Rate of Pay Prior to January 1, 1998**

6.  Prior to January 1, 1998, the City paid the same overtime rate for both contract and FLSA overtime. (Stip. ¶ 6).  This overtime rate was determined by dividing an officer's annual salary by 2,080 hours to obtain an hourly rate and then multiplying that amount by 1.5. (Stip. ¶ 6).  Prior to January 1, 1998, this rate did not include the duty availability allowance in its calculation of the regular rate used for deriving overtime payments under the FLSA.

**C.    Duty Availability Allowance.**

7.  The CBA requires that police officers receive  a "duty availability allowance" as compensation for being available to perform on the job at certain specified times.  (CBA § 20.13).

8.  For the years 1995 and 1996, every officer received a quarterly duty availability allowance of $455, which amounted to an annual duty availability allowance of $1,820. (Stip. ¶ 7).

9.  Beginning January 1, 1997, every officer received a quarterly duty availability allowance of $505, which amounted to an annual duty availability allowance of $2,020. (Stip. ¶ 7).

**D.    Computation of FLSA Rate of Pay After January 1, 1998**

10.  Beginning January 1, 1998, the City began to pay Plaintiffs an augmented FLSA overtime rate for FLSA overtime hours, which rate included the duty availability allowance

in the allocation of the regular rate for FLSA purposes. (Stip. ¶ 5). The FLSA does not require payment of overtime until an officer works in excess of 171 hours in a designated 28-day FLSA period. (Stip. ¶ 2).

**E.  Contract Overtime.**

11.  The CBA often requires the payment of overtime for work hours before the employee reaches the 171 hour threshold. Thus, there are work hours for which overtime is paid under the CBA that are not FLSA overtime work hours. (Stip. ¶ 2).

12.  On designated holidays the Officers received premium pay for the hours worked. (Comp. and Ans. ¶ 19). Prior to January 1, 1998, these hours were not included by the City as hours worked towards the 171 hours necessary in any given work period to reach the overtime threshold for purposes of the FLSA. (Burke Aff.¶ 3).

13.  Furthermore, in some instances, the CBA provides for overtime to be paid for hours worked prior to reaching the FLSA 171 hour threshold during a given work period. (Stip. ¶ 2). Specifically, Officers received contract overtime any time they worked in excess of their regular "tour of duty," or more than 8 hours in a day, or more than 5 consecutive days from Sunday to Saturday. (CBA § 20).

14.  Additionally, Officers received contract overtime when they were called back for additional duty beyond their regularly scheduled work hours, for attending court, or for work on holidays or their days off. (CBA § 20).

## F. Compensatory Time Under Contract.

15. Pursuant to the CBA, Officers receive compensatory time for various hours worked. (CBA § 20). Moreover, an Officer who resigns, retires or dies, receives payment for all unused compensatory time at the Officer's regular rate of pay. (Comp. and Ans. ¶ 21).

16. The wages paid out for compensatory time are the same whether the compensatory time was earned according to the CBA or mandated by the FLSA. (Comp. and Ans. ¶ 22).

17. The "duty availability allowance" is not included in the calculation of the regular rate used to "cash out" compensatory time. (Comp. and Ans. ¶ 22).

## G. Time Periods Involved.

18. The broadest possible relevant time period for Counts I and II begins July 16, 1995, which is three years prior to the filing of the original complaint. The relevant period for these counts ends December 31, 1997, which was the last date on which the City paid Plaintiffs at the same overtime rate for contract overtime and FLSA overtime. (Stip. ¶ 3).

19. During the relevant time period, the 28-day FLSA period for the Chicago Police Department tracked the police operational periods, which ran for 28 days beginning on a Thursday and ending on a Wednesday. Each Plaintiff worked a regular "tour of duty" in an FLSA period that varied from 18 days (144 hours), to 19 days (152 hours), to 20 days (160 hours), to 21 days (168 hours), to 22 days (176 hours). When a Plaintiff worked a 22-day (176 hours) regular "tour of duty," the Officer automatically received additional half-time for the hours from 171 to 176. (Stip. ¶ 4).

20. Beginning January 1, 1998, the City changed the FLSA period, such that every Officer's normal "tour of duty" was standardized to be 160 hours in every FLSA pay period. This was done by starting the 28-day FLSA period on a Sunday and ending on a Saturday. (Stip. ¶ 5).

## II. ISSUES PRESENTED

Only Counts I, II, III and VII of Plaintiffs' fifth amended complaint are currently before the Court. The FLSA requires overtime be paid at a rate of time and one-half the Officer's *regular rate of pay*. The FLSA defines the *regular rate of pay*. Under the terms of the CBA, Officers receive a "duty availability allowance" each quarter to compensate them for being available to perform on the job at certain specified times. Counts I and VII hinge on the common issue concerning the inclusion of the "duty availability allowance" in the calculation of the regular rate of pay.

Count II alleges the City underpaid Officers by not including holiday hours towards the 171-hour threshold.

Count VII involves the "duty availability allowance" not being included in the calculation of the regular rate of pay when officers were "cashed out." Officers receive compensatory time pursuant to both the CBA and the FLSA. An Officer who resigns, retires or dies receives payment for all unused compensatory time. This payment of unused compensatory time is referred to as "cashing out."

Counts I, II and VII raise the following issues for decision by the Court:

1)    whether the duty availability allowance should be included in determining the FLSA regular rate of pay;

2)    whether the City is entitled to a credit under the FLSA for the payment of contract overtime;

3)    whether a credit, if any, should be based upon pay periods or the entire liability period; and

4)    whether the City must include holiday hours in calculating the 171-hour FLSA threshold.

Count III of Plaintiffs' complaint involves a voluntary supplementary work program ("VSEP") in which Officers can work in a law enforcement capacity for the Chicago Transit Authority ("CTA") and the Chicago Housing Authority ("CHA"). The hours worked in this program are not counted towards the 171-hour FLSA threshold. Plaintiffs claim these hours should be counted. The City claims the hours should not be counted because the programs are exempt.

Count III raises the following issues for decision by the Court:

5)    whether the City's VSEP falls within the statutory exemption of 29 U.S.C. § 207(p)(1);

6)    whether the City is a separate and independent governmental entity from the Chicago Housing Authority ("CHA"); and

7)     whether the City is a separate and independent governmental entity from the Chicago Transit Authority ("CTA").

## III. CONCLUSIONS OF LAW

### A.    Jurisdiction

This action arises under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

### B.    Count I and VII - Duty Availability Allowance Issue

The FLSA was enacted to improve "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." 29 U.S.C. § 202(a). In furtherance of this policy, the FLSA requires non-exempt employers to pay their employees overtime compensation at a rate of one and a half times their regular hourly wage for each hour worked in excess of forty hours per week. 29 U.S.C. § 207(a). A special provision exists for public employees working in law enforcement activities. 29 U.S.C. § 207(k). The FLSA does not require the payment of overtime until an Officer works in excess of 171 hours in a designated 28-day FLSA period. 28 U.S.C. § 207(k)(1); 29 C.F.R. § 553.230(c).

In computing FLSA overtime, the first step is to determine the employee's "regular rate." "Regular rate" is defined to include "all remuneration for employment paid to, or on behalf of, the employee . . ." with seven exceptions. 29 U.S.C. § 207(e). Count I alleges the City was required to include the duty availability allowance as part of the numerator in

10

calculating the regular rate[6] from July 16, 1995, to December 31, 1997.[7] The City concedes the "duty availability allowance" does not fall into one of the seven exceptions and "should have technically been calculated into the FLSA 'regular rate.'" (City Tr. Br., p. 4).

Officers may accrue compensatory time under the CBA in lieu of overtime compensation. Under the CBA, an Officer who resigns, retires, or dies is entitled to receive payment for all unused compensatory time. (CBA § 26.5). Plaintiffs assert in Count VII that the City's failure to include the duty availability allowance in the FLSA regular rate of pay calculation caused Plaintiffs to be underpaid at the time they were cashed out. The parties agree the resolution of County VII flows from the resolution of Count I. If there is no rate violation in Count I, there is no basis for liability on Count VII. (Stip. ¶ 8).

The inclusion of the duty availability allowance in the regular rate of pay would have added between 87¢ and 97¢ per hour to the overtime rate for FLSA overtime hours. (City Tr. Br. p. 3). The City's defense to Counts I and VII is that it is entitled to an FLSA credit that is more than sufficient to offset any shortfall.

---

[6]Plaintiffs have dropped their claim that the uniform allowance should also have been included in the calculation of the regular rate. *See* 29 U.S.C. § 7(e)(2); 29 C.F.R. § 778.217(b)(2) (reimbursement for uniforms is not regarded as part of employee's regular rate).

[7]The parties stipulated to these dates as the broadest possible relevant time period. (Stip. ¶ 3). July 16, 1995, was three years prior to the filing of the original complaint, and December 31, 1997, was the last day the City did not include the "duty availability allowance" in the relevant calculation. Starting January 1, 1998, the City began to calculate the regular rate of pay to include this allowance.

## C. FLSA Credits for Extra Compensation

Certain contractual overtime payments are creditable towards deficiency in FLSA overtime payments:

> Extra compensation paid as described in paragraphs (5), (6), and (7) of subsection (e) of this section shall be creditable towards overtime compensation payable pursuant to this section.

29 U.S.C. § 207(h)(2).

Subsections (5), (6) and (7) provide in relevant part as follows:

> (5) extra compensation provided by a premium rate paid for certain hours worked by the employee in any day or workweek because such hours are hours worked in excess of eight in a day or in excess of the maximum workweek applicable to such employee under subsection (a) of this section or in excess of the employee's normal working hours or regular working hours, as the case may be;

> (6) extra compensation provided by a premium rate paid for work by the employee on Saturdays, Sundays, holidays, or regular days of rest, or on the sixth or seventh day of the workweek, where such premium rate is not less than one and one-half times the rate established in good faith for like work performed in non-overtime hours on other days; or

> (7) extra compensation provided by a premium rate paid to the employee, in pursuance of an applicable employee contract or collective-bargaining agreement, for work outside of the hours established in good faith by the contract or agreement as the basic, normal, or regular workday(not exceeding eight hours) or workweek (not exceeding the maximum workweek applicable to such employee under subsection (a) of this section, where such premium rate is not less than one and one-half times the rate established in good faith by the contract or agreement for like work performed during such workday or workweek.

29 U.S.C. § 207(e)(5)-(7).

12

The City seeks credits for extra compensation under subsections (5) and (6)[8] above for overtime payments made where Plaintiffs worked more than eight hours in a day, or worked on holidays, or worked on scheduled days off, or on a sixth or seventh day or outside the employee's normal tour of duty. Plaintiffs assert the City should not be allowed to offset its FLSA liability because the City failed to include the duty availability allowance in the calculation of the regular rate of pay. By improperly calculating the regular rate, the Plaintiffs assert that they were not properly paid for either contractual overtime under the CBA or FLSA overtime. As the Court explained in oral argument, this Court is dealing only with the City's obligations under the FLSA, not whether it violated the CBA.

Subsection (5) describes "extra compensation provided by a premium rate paid for certain hours worked by the employee . . . because such hours are worked . . . in excess of the employee's normal working hours." The regulation interpreting this provision makes it clear that so long as the overtime compensation is contingent upon the employee having worked in excess of eight hours in a day or in excess of the specified number of hours in the workweek, whether the extra compensation is at a rate greater than, less than, or at one and one-half times the base rate, the extra premium compensation "may be credited toward statutory overtime payments pursuant to section 7(b) of the Act." 29 C.F.R. § 778.202(a). This is precisely the type of extra compensation Plaintiffs receive under Article 20 of the

_____

[8]The compensation described in subsection (7) is for "clock pattern" premium pay, extra pay for working undesirable hours. *See* 19 C.F.R. § 778.204. This exception is not applicable because Plaintiffs receive the same pay regardless of what shift they work.

CBA for all hours worked in excess of the normal work day (eight hours) and the normal work week (forty hours). CBA § 20.2 provides: "All approved overtime in excess of the hours required of an officer by reason of the officer's regular duty, whether of an emergency nature or of a non-emergency nature, shall be compensated for at the rate of time-and-one-half." The City is entitled to a credit for those overtime payments. Even if this payment was less than the FLSA overtime rate by reason of the duty availability allowance having been excluded in the computation, any overtime payments are creditable pursuant to 29 U.S.C. § 207(e)(5).

Similarly, subsection (6) describes "extra compensation provided by a premium paid for work by the employee on . . . holidays where such premium rate is not less than one and one-half times the rate established in good faith for like work performed in non-overtime hours on other days." Therefore, in order to qualify as a credit towards statutory overtime due, overtime in subsection (6) must be paid at a premium rate of at least time and one-half. 29 C.F.R. § 778.203. Because the premium payments to Plaintiffs for work on holidays is at either two and a half or three times their normal hourly rate, these amounts are creditable against the City's FLSA liability. (CBA § 11.2). Plaintiffs have not pointed to any type of subsection (6) overtime where they receive less than time and a half. Therefore, unless exclusion of the duty availability allowance brings holiday or other overtime covered by subsection (6) below one and one-half times the FLSA regular rate, the City is entitled to a credit for all such payments.

14

The case law is replete with examples similar to the case at bar, where the courts have allowed the employer to offset the FLSA overtime liability with contract overtime payments. *Alexander v. United States*, 32 F.3d 1571, 1576-77 (Fed. Cir. 1994) (extra compensation provided at a premium rate pursuant to subsections (5) and (6) of § 207(e) was creditable towards overtime compensation due to border patrol agents under FLSA); *Kohlheim v. Glynn County, Georgia*, 915 F.2d 1473, 1481 (11th Cir. 1990) (allowing county to use all contractual overtime, not just overtime paid at a time-and-one-half rate, towards statutory overtime found to be due); *Biggs v. Joshua Hendy Corp.*, 183 F.2d 515 (9th Cir. 1950) (employer is liable for overtime incurred when employees worked through lunch period, but liability may be offset with contractual overtime not required by statute); *Dunn v. County of Muskegon*, No. 1:97-cv-1003, 1998 U.S. Dist. LEXIS 19032, at *21 (WD Mich. Nov. 5, 1998) (county employer liable for failing to include longevity bonuses and shift premiums in the regular rate of pay, yet certain payments to the plaintiffs fell within subsection (5) and (6) of § 207(e), and could offset liability). In summary, the City is entitled to an offset for the overtime payments which it has made consistent with 29 U.S.C. § 207(e)(5) and (6).

**D.     Offset For Overtime Paid Applies on a Pay Period Basis.**

Having held the City is entitled to an offset for its overtime payments made, the issue is whether the offset should be applied on a pay period by pay period basis or as one offset against the entire liability period. The Officers contend the offsets should be determined on a period by period basis. The City contends the offsets should apply to the aggregate liability

regardless of pay periods. The Court holds the offsets should be calculated on a period by period basis.

To place this issue in context, the Court posits the following hypothetical. Assume an Officer worked 181 hours in a pay period in 1997 and was underpaid his FLSA overtime. Assume further the same Officer received double or triple time for working holidays or extra shifts during a pay period in 1998, an amount in excess of the FLSA overtime required. According to the City, the FLSA extra pay in 1998 should be offset against any FLSA underpayments in 1997. The Court disagrees.

The Wage and Hour Division of the Department of Labor was created to administer the Act. 29 U.S.C. § 204. The regulations require prompt payment of overtime. The time of payment for overtime is dealt with in 29 C.F.R. § 778.106, which provides in relevant part as follows:

> . . . The general rule is that overtime compensation earned in a particular workweek must be paid on the regular pay day for the period in which such workweek ends. When the correct amount of overtime compensation cannot be determined until some time after the regular pay period, however, the requirements of the Act will be satisfied if the employer pays the excess overtime compensation as soon after the regular pay period as is practicable. Payment may not be delayed for a period longer than is reasonably necessary for the employer to compute and arrange for payment of the amount due and in no event may payment be delayed beyond the next payday after such computation can be made.

Therefore, the regulations contemplate overtime to be computed and paid on a pay period by pay period basis unless it is impractical to do so. This principle has been recognized by the

16

courts. *See Reich v. Interstate Brands Corporation,* 57 F.3d 574, 576 (7th Cir. 1995)(General rule is that overtime must be paid on the regular pay day unless the collective bargaining agreement provides a different rule); *Dominici v. Board of Education,* 881 F.Supp. 315, 319 (N. D. Ill. 1995) (Although the FLSA does not create an explicit statutory deadline for payment of overtime wages, the statute does create an implicit requirement for reasonably prompt payment."); *Mullins v. Howard County, Maryland,* 730 F. Supp. 667, 671 (D. Md. 1990) ("The Court therefore concludes that overtime pay earned by an employee during a properly selected work period, whether it be a week or a 21-day period as is involved here, must be paid in the next paycheck after the overtime is worked, unless its computation cannot practicably be accomplished by then.")

The Court sees no reason why the same principle should not apply when offsets are involved. A pay period by pay period calculation is consistent with the statute and the regulations. In this way, the employee and employer are placed in the same position as they would have been if the City had correctly calculated the overtime. To permit the City to obtain a credit against a period where no credit was otherwise due, would harm the officers and confer a benefit upon the City, which is clearly not intended by the FLSA. By calculating credits on a pay period by pay period basis, both the officers and the City receive the benefits and credits to which the FLSA entitles them. The Court respectfully disagrees with those cases which have come to a contrary conclusion.

In *Abbey v. City of Jackson*, 888 F. Supp. 181 (E.D. Mich. 1995), the court held that credits may offset all liability. The Abbey court recognized the decision by the Fourth Circuit in *Roland Electric Co. v. Black*, 163 F.2d 417 (4th Cir. 1947), which held that an employer was obligated to pay overtime promptly and when due on any regular payment date and applied a period by period credit. This Court believes the *Roland* case is better reasoned and the Department of Labor regulations, which support a prompt payment of overtime, make a period by period credit appropriate. 29 C.F.R. § 778.103 (directs employers to pay overtime on a weekly basis); 29 C.F.R. § 778.104 (an employer cannot average the number of hours worked over two weeks in order to avoid paying overtime); 29 C.F.R. § 778.202(c) (credits may be given for daily compensation "against the overtime compensation which is due under the statute for hours in excess of 40 *in that workweek*") (emphasis added). While administrative interpretations of the FLSA are not binding on the courts, they nonetheless serve as "a body of experience and informed judgment to which courts and litigants may properly resort for guidance." *Skidmore v. Swift*, 323 U.S. 134, 140, 65 S. Ct. 161, 164 (1944).

Defendants rely upon *Dunn v. Muskegon*, 1998 U.S. Dist. LEXIS 19032 (W.D. Mich. 1998), in which the court applied the offset over the entire liability period. The *Dunn* court cites to *Alexander v. United States*, 32 F.3d 1571, 1577 (Fed. Cir. 1994), in which the court used broad language that the extra pay for INS employees performing immigration inspection duties constituted extra compensation which was "creditable towards any overtime

18

compensation due under the FLSA." However, the facts in *Alexander* show the credit was computed on a pay period basis. 32 F.3d at 1572-3. Other courts have also recognized the City's entitlement to an offset, but have not dealt specifically with whether the calculation must be performed on a period by period basis. *Kohlheim v. Glynn County*, 915 F.2d 1473, 1481 (11th Cir. 1990) ("the county is entitled to set off all previously paid overtime premiums, not just those of at least 1½ times the regular rate, against any overtime compensation found to be due and owing during the damages phase of the trial.")

The importance Congress, the regulations, and the courts have placed on the prompt payment of overtime lead this Court to conclude that the offsets to which the City is entitled should be calculated on a pay period by pay period basis. This preserves the Officers' entitlement to the overtime and the City's entitlement to a credit as if no error were committed in the initial computation.

## E.    Count II - Premium Rate Hours Issue

Count II alleges that prior to January 1, 1998, the City failed to count holiday and other hours, paid to police officers at a premium rate, towards the 171-hour overtime threshold under the FLSA. The CBA requires that the police officers be paid premium pay for hours worked on designated holidays and other occasions. CBA § 11.2. When tallying the hours worked, for purposes of determining whether the officer worked more than 171 hours in a 28-day period, the City did not include the holiday hours. According to 29 C.F.R. § 553.230, overtime compensation (in premium pay or compensatory time) is required for

all hours worked in excess of 171. The City's failure to include holiday hours was inconsistent with the FLSA. However, to the extent these holiday hours were paid at a premium rate pursuant to the CBA, the City is entitled to an offset as described earlier in section III.C of this opinion. To the extent the Plaintiffs are asking whether the benefits they won under the CBA can be used to offset the City's FLSA liability, the answer is yes. To the extent the officers contend the CBA entitles them to more than the FLSA, this is not the appropriate forum for decision.

## IV. ADDITIONAL FINDINGS OF FACT FOR COUNT III – VOLUNTARY SPECIAL EMPLOYMENT PROGRAM

### A. The Components of the Voluntary Special Employment Program

21. Various Officers work hours in excess of the regularly scheduled duty hours in a program known as the Voluntary Special Employment Program ("VSEP"). (Stip. ¶ 13). Participation in this program is voluntary on the part of the officers. (Stip. ¶ 17). Within VSEP, the Officers perform law enforcement and patrol functions for the Chicago Transit Authority ("CTA") and the Chicago Housing Authority ("CHA"). (Dept. Spec. Ord. No. 91-18). Special order 91-18 regulates the VSEP. (Stip. ¶ 13). This special order was issued by the Superintendent of the CPD pursuant to the Superintendent's authority granted by the City ordinances. (Stip. ¶ 9).

22. Officers wear their regular CPD uniforms and are subject to the CPD rules and regulations while performing work under the VSEP. (Stip. ¶¶ 14, 18 & 20). The wages

earned by the Officers in VSEP are paid by means of a separate check issued by the City or in some circumstances by direct deposit. (Stip. ¶ 19). However, the wages are the responsibility of and are paid by monies from the CTA or the CHA. (Dept. Spec. Ord. No. 91-18). Hours worked by Officers while engaged in VSEP are not counted towards the 171 hours in any given 28-day work period used to calculate overtime under the FLSA. (Stip. ¶ 21).

## B. The City, the CTA, and the CHA are "Separate and Independent"

23. The City, the CTA and the CHA are separate and independent entities, created and granted authority by separate statutory provisions. The City of Chicago is a municipal corporation organized and operating under the laws of the State of Illinois. (Stip. ¶ 9). Furthermore, the City gains its broad powers from the state Constitution. Ill. Const. 1970, art. VII, § 6(a).

### 1. The CHA is "Separate and Independent"

24. In contrast to the authority of the City, the authority of the CHA is derived from another Illinois statute. The CHA is a municipal corporation organized and operated pursuant to 310 ILCS 10/1 *et seq.* (Stip. ¶ 11). According to Illinois state law, housing authorities such as the CHA are independent municipal corporations. 310 ILCS 10/8. Additionally, state statutes also grant the CHA the power to hire employees (310 ILCS 10/6), the authority to borrow, lend or invest money (310 ILCS 10/8.3), the authority to contract with federal agencies (310 ILCS 10/13 and 10/27), and the authority to sue and be sued.

(310 ILCS 10/8.5). The CHA is an employer under 29 U.S.C. § 207(p) and 29 C.F.R. § 553.227(a). (Stip. ¶ 11).

25. Gregory Russ is the Chief of Policy Development for the CHA. (Russ Aff. ¶ 1). Although the Mayor of the City appoints the commissioners to the CHA, the nature of those appointments is determined by state statute. (Russ Aff ¶ 4). The by-laws are clear that the management and control over all business of the CHA is vested in its Board of Commissioners. (Russ Aff. ¶ 5). Regarding the CHA's financing, the majority of funding for the CHA comes from HUD grants, much of the remainder is from tenants' rent and a negligible amount is received from the City of Chicago. (Russ Aff. ¶ 8).

26. Another factor demonstrating that the City and the CHA are "separate and independent" is that they participate in different retirement programs. The City police officers participate in the Policeman's Annuity and Benefit Fund. 40 ILCS 5/5-101 *et seq.* and CHA employees are a part of another separate retirement plan. (Def. Ex. A).

## 2. The CTA is "Separate and Independent"

27. The CTA is a separate municipal corporation organized and operated pursuant to 70 ILCS 3605/1 *et seq.* (Stip. ¶ 12). In addition, state statutes authorize the CTA to enter contracts (70 ILCS 3605/5), to receive funds from and otherwise transact business with the Regional Transportation Authority (70 ILCS 3605/9a), to issue tax anticipation notes (70 ILCS 3605/12a), to sue and be sued (70 ILCS 3605/5), and to make rules and regulations and

to pass ordinances (70 ILCS 3605/30 and 31). The CTA is an employer under 29 U.S.C. § 207(p) and 29 C.F.R. § 553.227(a). (Stip. ¶ 12).

28. Mr. Anosike is the Chief Financial Officer and Treasurer of the CTA. (Anosike Aff.¶¶ 1 and 2 ). He submitted with his affidavit budget summaries for the CTA which were not a part of the City's budget and had been created independently by the CTA. The CTA's budget for the year 2000 includes the following funding sources: sales tax revenue levied by the Regional Transit Authority ("RTA"), federal assistance, state assistance, interest earnings, Service Board fund balances and capital financing. (Anosike Aff., ¶ 5). The budget does include money the City has contributed to the CTA, but it makes up less than ½ of 1% of the CTA's operating budget. (Anosike Aff. ¶ 6). The money the City provides for the CTA is based on the statute. (Anosike Dep. p. 80). In the 2000 budget for the CTA, there is a cost of contracted security totaling $19.4 million from several sources including the City.

29. The CTA pays the City $7.5 million per year for police officers it uses through the VSEP. (Anosike Aff. ¶ 8).

30. The City and the CTA participate in separate, statutorily mandated, employee retirement programs. CTA employees are required to participate in the Metropolitan Transit Authority Pension Fund. (40 ILCS 5/22 -101).

# V. ADDITIONAL CONCLUSIONS OF LAW FOR COUNT III

## A. Issue Presented

Count III raises the question of whether hours worked by Officers in VSEP should count towards the 171 hours threshold for City overtime under the FLSA. VSEP hours were spent patrolling and otherwise engaged in police-like functions for the CTA and CHA.

The City argues the FLSA expressly provides that the hours worked by City police officers in the VSEP are "special detail work" hours which exempts the City from including them as FLSA overtime. 29 U.S.C. § 207(p)(1) provides:

> If an individual who is employed by a State, political subdivision of a State, or an interstate governmental agency in fire protection or law enforcement activities...and who, solely at such individual's option, agrees to be employed on a special detail by a separate or independent employer in . . . law enforcement, or related activities, the hours such individual was employed by such separate and independent employer shall be excluded by the public agency employing such individual in the calculation of the hours for which the employee is entitled to overtime compensation under this section if the public agency –
> (A) requires that its employees engaged in fire protection, law enforcement, or security activities be hired by a separate and independent employer to perform the special detail,
> (B) facilitates the employment of such employees by a separate and independent employer, or
> (C) otherwise affects the condition of employment of such employees by a separate and independent employer.

## B. Standard for Statutory Review

As a general rule, when a statute is clear and unambiguous, the court must give effect to the plain meaning of the statute. *United States v. Hayward*, 6 F.3d 1241, 1245 (7th Cir.

1993). However, where the statutory meaning is "silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843, 104 S. Ct. 2778, 2782 (1984). DOL regulations provide guidance as to the scope and extent of exemptions to the FLSA and as such are entitled judicial deference. *Spradling v. City of Tulsa,* 95 F.3d 1492, 1495 (10th Cir. 1996). The "special detail work" exemption is not specifically defined in 29 U.S.C. § 207(p)(1). DOL regulations provide a more specific interpretation of what is encompassed by the exemption in the statute.

DOL regulation, 29 C.F.R. § 553.227(b), sets forth a two part test to determine whether hours worked for another entity may be exempt under § 207(p)(1)'s "special detail work" exemption. The two prongs of the test are: (1) the "special detail" assignment must be undertaken and performed solely at the employee's option, and (2) the two employers must be "in fact separate and independent." 29 C.F.R. § 553.227(b).[9] If both prongs are satisfied, the exemption applies and the hours worked for the separate employers are not to be combined for purposes of assessing overtime compensation. *Barajas,* 87 F. Supp. 2d at 1205.

---

[9] Plaintiffs' argument that VSEP work must be either short-term or infrequent is misplaced. In this case, only the exemption under 29 U.S.C. § 207(p)(1) is involved. In contrast, the exemption under 29 U.S.C. § 207(p)(2) allows an employer to exclude certain hours for the same employer where such work is "on an occasional or sporadic basis." This limitation is inapplicable to an exemption under (p)(1).

## C. The City Satisfies Both Prongs of the Exemption Test

It is stipulated that enrollment in the VSEP is purely voluntary. (Stip. ¶ 17). Thus, the issue in this case comes down to the second prong and a determination of whether the City, the CTA and CHA are "separate and independent." Neither the statute nor the regulation define the terms "separate and independent." The regulation states, "whether two employers are in fact, separate and independent can only be determined on a case by case basis." 29 C.F.R. § 553.227(c). To guide the courts in their case by case analysis there is only a small amount of case law and DOL opinion letters.

Although the Plaintiffs contend the VSEP is not the type of program Congress had in mind when it created the exemption, in many ways the regulation lays the groundwork for the VSEP. 29 C.F.R. § 553.227(d) states:

> The primary employer may facilitate the employment or affect the conditions of employment of such employees. For example, a police department may maintain a roster of officers who wish to perform such work. The department may also select the officers for special details from a list of those wishing to participate, negotiate their pay, and retain a fee for administrative expenses. The department may require that the separate and independent employer pay the fee for such services directly to the department, and establish procedures for the officers to receive their pay for the special details through the agency's payroll system. Finally the department may require that the officers observe their normal standards of conduct during such details and take disciplinary action against those who fail to do so.

Under the City's VSEP, the CPD must approve an officer for participation, officers wear their CPD uniforms, and are at all times subject to CPD rules and discipline. (Stip. ¶¶ 14, 17, 19). This is consistent with the regulation.

Although the FLSA's mandatory overtime compensation requirements serve a broad remedial purpose, Congress did set forth exemptions to the overtime requirements. *Barajas v. Unified Government,* 87 F. Supp. 2d 1201, 1204 (D. Kan. 2000). The court in *Barajas* faced similar issues. In *Barajas,* off-duty police officers who were employees of the unified city/county government, agreed to perform additional patrolling duties in public housing complexes. Just as in this case, the hours spent patrolling the housing complexes were not combined, for overtime purposes, with their hours performing for their primary employer, the police department. *Id.* at 1209. The *Barajas* court based a great deal of its reasoning on DOL opinion letters and the factors they presented in determining whether the employers were "separate and independent." DOL interpretations as provided in its opinion letters "are 'entitled to respect' . . . to they extent that they are persuasive . . .." *Christensen v. Harris County,* 529 U.S. 576, 578, 120 S. Ct. 1655, 1657 (2000) (quoting *Skidmore v. Swift & Co.,* 323 U.S. 134, 140, 65 S. Ct. 161,164(1944)).

The *Barajas* court, relying in part on the factors cited in the DOL's July 1, 1993, opinion letter and the DOL's October 1985, letter, set out several factors that it considered in determining whether the housing authority was separate and independent from the city/county. Among the factors the court found to be important were: (1) whether the agencies maintained separate payrolls; (2) whether the entities had arms-length dealings regarding employment; (3) whether the agencies have separate budgets; (4) whether the employees of the entities participate in separate retirement systems; (5) whether they are

independent entities under state statute; and (6) whether they can both sue and be sued. *Id.*

at 1206. The court considered each of the factors, but in making its decision put an emphasis

on financial considerations, explaining, "the [b]udgetary control factor [is] highly relevant

to the determination of whether two employers are in fact separate and independent for

purposes of § 207(p)(1)." *Id.* at 1209. In *Barajas,* there was evidence that the housing

authority and city/county had the same retirement program and there were also factual issues

as to whether the city/county had control over the housing authority budget. *Id.* at 1208,

1209. The court denied summary judgment on the issue of "separate and independent"

because of the factual issues regarding the financial control of the Housing Authority.

This Court is conducting a trial on the papers and therefore can make a decision on

the merits as to whether the City, CHA, and CTA are "separate and independent." The Court

holds they are.

### 1. The City and the CTA are "Separate and Independent".

The CTA is a statutorily created, independent agency. The employees of the CTA

participate in a different retirement program from that of City police officers. The CTA has

a separate payroll from the City. The CTA has its own budget. The City does not control

the budget or any of the fiscal needs of the CTA.

Furthermore, with over 99% of the CTA's funding coming from sources other than

the City, it is evident that the CTA is separate and independent from the City. It is more

likely that the CTA is dependent on the RTA than the City. The CTA depends on the RTA

28

for funding, budget approval, and other fiscal matters. The CTA does not depend on the City. The VSEP between the City and the CTA is the product of a negotiated agreement and is not a sham.

## 2. The CHA is "Separate and Independent" From the City

The only time period in question concerning the CHA and the VSEP is from May 27, 1999 through December 31, 1999. This is because HUD took over control of the CHA in June of 1995 and maintained control until May 27, 1999, making it impossible for the City to have control. (Russ Aff. ¶¶ 6 and 7). Plaintiffs make no claim for this period. Furthermore, the VSEP program for the CHA concluded as of December 31, 1999. (Burke Dep. at 35-36). Thus, for much of the time in question the CHA was under the control of HUD and was clearly "separate and independent" of the City.

The CHA is a statutorily created, independent agency. Its employees participate in a retirement program entirely separate from the City's. Furthermore, as the record aptly demonstrates, the City and the CHA do not share a budget nor does the City control the CHA budget. Despite Plaintiffs' argument that this is not so, the CHA maintains and operates its own budget through its Board. The CHA must present its budget to the City Council, however, the record does not indicate that the City Council has veto power over the budget. The CHA is also required to make its budget available for public viewing and comment. These requirements do not bar the CHA from being "separate and independent."

The City clearly does not control nor provide for the fiscal needs of the CHA. The CHA has its own payroll and separate funding sources. Although, the CHA board is appointed by the mayor, the record reveals the CHA operated as a separate and independent employer from May 27, 1999, through December 31, 1999. Additionally, the CHA is not listed as a dependent government in the Census of Government. *See 1997 Census of Governments*, Volume I, Government Organization.

## VI. CONCLUSION

The Court answers the questions posed by the parties in the liability phase of this trial on the papers as follows:

1)   whether the duty availability allowance should be included in determining the FLSA regular rate of pay?

      Yes.

2)   whether the City is entitled to a credit under the FLSA for the payment of contract overtime?

      Yes.

3)   whether a credit, if any, should be based upon pay periods or the entire liability period?

      Pay periods.

4)   whether the City must include holiday hours in calculating the 171-hour FLSA threshold?

Yes.

5)       whether the City's VSEP falls within the statutory exemption of 29 U.S.C.

§ 207(p)(1)?

Yes.

6)       whether the City is a separate and independent governmental entity from the

Chicago Housing Authority ("CHA")?

Yes.

7)       whether the City is a separate and independent governmental entity from the

Chicago Transit Authority ("CTA")?

Yes.


**SO ORDERED THIS 21ˢᵗ DAY OF DECEMBER 2000.**


**MORTON DENLOW**
**UNITED STATES MAGISTRATE JUDGE**

**Copies delivered in open court or mailed to:**


Dale D. Pierson
Jennifer L. Dunitz-Geiringer
Baum, Sigman, Auerbach,
Pierson, Neuman & Katsaros, LTD.
200 West Adams St., Suite 2200
Chicago, Illinois 60606

Counsel for Plaintiff


Mara S. Georges
Patrick J. Rocks, Jr.
Corporation Counsel
30 N. LaSalle St., Suite 1020
Chicago, Illinois 60602

Counsel for Defendant


Thomas J. Pleines
General Counsel
Fraternal Order of Police
Chicago Lodge No. 7
1412 W. Washington Blvd.
Chicago, Illinois 60607

Counsel for Plaintiff


Mary L. Mikva
Abrahamson, Vorachek & Mikva
120 N. LaSalle St., Suite 1050
Chicago, Illinois 60602

Counsel for Defendant