Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Morton Denlow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 4335 | **DATE** | 9/5/2001 |
| **CASE TITLE** | Nolan, et al. Vs. City of Chicago | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. For the foregoing reasons, pursuant to a trial on the papers, judgment shall be entered in favor of Defendant, City of Chicago, and against Plaintiffs on Count VI.
(11) ■ [For further detail see order attached to the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| ✓ | Notices mailed by judge's staff. | SEP 06 2001 date docketed | 57 |
| | Notified counsel by telephone. | | |
| | Docketing to mail notices. | | |
| | Mail AO 450 form. | FILED FOR DOCKETING 01 SEP -5 PM 4:47 | docketing deputy initials |
| | Copy to judge/magistrate judge. | | 9/4/2001 date mailed notice |
| DK | courtroom deputy's initials | Date/time received in central Clerk's Office | DK mailing deputy initials |

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WILLIAM J. NOLAN, FRANCIS A. VALADEZ, RICHARD PALADINO, LAWRENCE CLARK, ROBERT DOYLE, JOHN DOE, JANE SMITH and JOHN JONES, individually, and on behalf of all similarly situated individuals, and FRATERNAL ORDER OF POLICE, CHICAGO LODGE NO. 7, <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF CHICAGO, a municipal corporation, <br><br> Defendant. | No. 98 C 4335 <br><br> Magistrate Judge Morton Denlow <br><br><br> DOCKETED <br><br> SEP 0 6 2001 |

## MEMORANDUM OPINION AND ORDER

This case presents the issue of whether the City of Chicago ("Defendant" or "City") made timely overtime payments to its police officers ("Plaintiffs" or "Officers") in conformity with the Fair Labor Standards Act ("FLSA" or "Act"). This Court has previously decided the issues raised by Counts I, II, III and VII of Plaintiffs' Fifth Amended Complaint. *Nolan v. City of Chicago*, 125 F. Supp. 2d 324 (N.D. Ill. 2000). This opinion addresses the issues raised in Count VI. The parties have once again elected to proceed by means of a trial on the papers based upon an agreed evidentiary record consisting primarily of the affidavit of Marvin Shear, Assistant Director of Finance for the Chicago Police Department, and attachments thereto. In addition, the parties have filed a supplemental stipulation.

The following constitute the Court's findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure. To the extent certain findings may be deemed to be conclusions of law, they shall also be considered conclusions. Similarly, to the extent matters contained in the conclusions of law may be deemed to be findings of fact, they shall also be considered findings.

## I. FINDINGS OF FACT

**A. Collective Bargaining Agreement**

1. Plaintiffs are present or former police officers in the Chicago Police Department ("CPD").

2. The City of Chicago is a municipal corporation organized and operating under the laws of the State of Illinois. The CPD is an executive department of the City of Chicago created and operating pursuant to section 2-84-00 *et seq.*, of the Municipal Code of Chicago. The City is an employer under the FLSA. 29 U.S.C. § 203(d). (Stip. ¶ 9).

3. Under the authority of the Illinois Public Labor Relations Act, the Fraternal Order of Police, Lodge No. 7 ("FOP") is the sole and exclusive collective bargaining representative for all sworn police officers below the rank of sergeant, excluding probationary officers, employed by the CPD in matters concerning wages, hours, and other terms and conditions of employment. (Stip. ¶ 10).

4. The City and the FOP have been parties to a collective bargaining agreement ("CBA") since 1981. (Comp. and Ans. ¶ 12). At all relevant times under the CBA, Officers

were compensated at the rate of at least time and one-half for hours worked in excess of an officer's regular "tour of duty." In some instances, compensation was more than time and one-half due to negotiated sections of the CBA. (Stip. ¶ 1).

5. The City makes overtime payments in accordance with the CBA. The CBA provides in relevant part as follows:

> Except for delays caused by payroll changes, data processing or other breakdowns, or other causes outside the Employer's control, the Employer shall continue its practice with regard to the payment of wages, which generally is: (1) Payment of wages provided herein shall be due and payable to an officer no later than the 1st and 16th of each month, (2) Holiday premium pay shall be due and payable to the officer no later than 22nd day of the month following the month in which the holiday premium was earned and (3) Other premium pay shall be payable to the officer no later than the last day of the period following the period in which the premium work was performed.

(CBA ¶ 26.4; Shear Aff. ¶ 2).

**B.     Overtime Payment Process**

6. The CPD utilizes a manual timekeeping system to track the daily work hours of Chicago police officers. (Shear Aff. ¶¶ 5-6). Unit timekeepers manually maintain a separate Time and Attendance Card for each officer in the unit. The information on the Time and Attendance Card must be derived from daily Attendance and Assignment Sheets and individual time due slips. (Shear Aff. ¶ 5 and Pl. Exs. B, C and D).

7. The City has been unable, thus far, to implement an automated timekeeping system for police officers because of the complexities of computing overtime benefits. (Shear Aff. ¶ 6). Under the CBA, there are specific and varied overtime benefits that apply in various

3

circumstances. For example, an officer who works a sixth or seventh day is paid at time and one-half. (Shear Aff., ¶ 6, CBA ¶ 20.3). When an officer is called back to work, he or she must be compensated for a minimum of two hours at the officer's overtime rate. (CBA ¶ 20.4). When an officer has court duty, the officer also receives a minimum of two hours at the overtime rate, with certain detailed exceptions. (CBA ¶ 20.5). The Time and Attendance card which is maintained for each officer reflects some of the complexity of the Chicago Police Department's timekeeping system. (Pl. Ex. B).

8. The City continues to work towards a more automated system and hopes to phase in such a system within the next eighteen months to two years. (Shear Aff. ¶ 6).

9. It is not until the FLSA period ends that the unit timekeeper can calculate to what extent an officer has worked FLSA overtime. At or near the end of each 28-day FLSA cycle, the Finance Division prepares a listing for each of the approximately 120 Chicago Police Department units and forwards those documents to timekeeping personnel in each unit. (Shear Aff. ¶ 7 and Pl. Ex. E). Timekeeping personnel within each unit must first tally and then take the information from the Time and Attendance cards and manually enter it onto the Finance Division form. This form is then reviewed by the unit commander and returned to the Finance Division. On average, the Finance Division receives these completed forms from all units with 10-12 days after the end of each 28-day FLSA cycle. (Shear Aff. ¶ 7).

10. Once the Finance Division receives the forms back from all of the police units, this information must all be manually entered into the City's computerized payroll system.

4

(Shear Aff. ¶ 8). This requires the payroll section of the Police Department's Finance Division to enter data for each of the approximately 4,000 to 6,000 officers who have worked overtime in the last FLSA period. (Shear Aff. ¶ 9). This second phase takes between 10 and 14 days. (Shear Aff. ¶¶ 8-10).

11. After the payroll data has been collected and entered, arrangements must be made to make deductions, make direct deposit payments to those who want them, and to cut and deliver checks. First, a report from the Rapid Access Management Information System ("RAMIS") is created to audit all entries. This takes 2 to 3 days. (Shear Aff. ¶ 11). The audited information is then placed into a payroll system that will make deductions for wage garnishments, taxes, and Medicare. This system also identifies those officers who have requested direct deposit. This phase takes 1-1/2 to 2 days. (Shear Aff. ¶ 12). The next phase is making direct deposit payments and cutting checks. This phase takes approximately 2 days. (Shear Aff. ¶ 13). The final phase is distributing paychecks. This takes approximately 1 day. (Shear Aff. ¶ 14).

12. The following chart summarizes the various calculations that must be made and procedures that must be followed in order to accurately and appropriately make FLSA overtime payments to the approximately 4,000 to 6,000 officers who work overtime in any given FLSA 28-day period. (Shear Aff. ¶¶ 6-14).

5

| Phase 1<br>10-12 days | Unit timekeepers tally all information from Time and Attendance cards and enter information on overtime time, out of grade, etc. on form provided by Finance Division and forward it to Finance. |
|---|---|
| Phase 2<br>10-14 days | Finance Division enters overtime information into computerized payroll master system for 4,000-6,000 officers. |
| Phase 3<br>2-3 days | Finance Division creates a report to audit entries. |
| Phase 4<br>1-1/2 - 2 days | The payroll system charges deductions and identifies direct deposit recipients. |
| Phase 5<br>2 days | The payroll system prints paychecks and transmits direct deposit payments. |
| Phase 6<br>1 day | The police department distributes checks. |

13. The City of Chicago pays all overtime to the Officers in accordance with the schedule set forth in Section 26.4(3) of the Collective Bargaining Agreement, which calls for payment no later than the last day of the FLSA period following the period in which the overtime was worked. (Supp. Stip. ¶ 1).

14. Before all of the Overtime/Out of Grade Pay Listings are returned from each of the approximately 120 units, the Finance Department has already begun inputting data so that it can make overtime payments in accordance with the timetable set forth in Section 26.4(3) of the Collective Bargaining Agreement and in accordance with the schedule set forth in paragraph 12 above. (Supp. Stip. ¶ )

C.  **Holiday Payment Process**

15. Holiday pay is a separate payroll that is calculated at the end of the calendar month, rather than at the end of the 28-day FLSA period. (Shear Aff. ¶ 15). Holiday pay under the CBA is paid by the 22nd day of the month after the holiday is worked. (CBA ¶ 26.4).

16. The calculation for holiday pay is easier than the overtime calculation. An officer is entitled to elect 4 hours of holiday pay if he or she works on a holiday. (Shear Aff. ¶16 and CBA ¶ 11.2). Thus, the unit need only report which officers worked on holidays and elected to receive pay. (Shear Aff. ¶ 16). In addition, the amount of information that must be entered by the Finance Department is generally less for holiday pay than for overtime pay. (Shear Aff. ¶ 16).

17. At all times between July 1, 1995 and August 14, 2001, the CPD has paid overtime and holiday pay in accordance with the CBA. (Shear Aff. ¶¶ 1 and 15 and Supp. Stip. ¶ 1).

## II. ISSUES PRESENTED

Count VI of Plaintiff's Fifth Amended Complaint alleges the City violates the FLSA because it delays paying officers for their overtime and holiday pay. The City contends the overtime and holiday payments are made in accordance with the FLSA and the CBA. Count VI raises the following issues for decision by the Court.

1) Whether the City makes overtime and holiday payments in accordance with the FLSA; and

2)   if not, whether the CBA permits the City to have additional time to make the overtime payments.

### III. CONCLUSIONS OF LAW

**A.   Jurisdiction**

This action arises under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

**B.   Count VI - Timeliness of Overtime Payments**

The FLSA does not specifically define when overtime payments must be made. The FLSA states that "no employee shall employ any of his employees ... for a workweek longer than forty hours unless such employee receives compensation [for the additional hours] at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a).

The Wage and Hour Division of the Department of Labor was created to administer the FLSA. 29 U.S.C. § 204. The Department of Labor interpretive bulletin requires prompt payment of overtime. The time of payment for overtime is dealt with in 29 C.F.R. § 778.106, which provides in relevant part as follows:

> There is no requirement in the Act that overtime compensation be paid weekly. The general rule is that overtime compensation earned in a particular workweek must be paid on the regular pay day for the period in which such workweek ends. When the correct amount of overtime compensation cannot be determined until some time after the regular pay period, however, the requirements of the Act will be satisfied if the employer pays the excess overtime compensation as soon after the regular pay period as is practicable. Payment may not be delayed for a period longer than is reasonably necessary for

8

the employer to compute and arrange for payment of the amount due and in no event may payment be delayed beyond the next payday after such computation can be made.

Section 778.106 is part of an official interpretative bulletin of the Department of Labor. See 29 C.F.R. §778.1. This provision is not a regulation and does not have the effect of law. *Brooks v. Village of Ridgefield Park*, 185 F.3d 130, 135 (3rd Cir. 1999). Rather, the force of this provision depends upon its persuasiveness and whether or not it is a reasonable construction of the FLSA. *Brooks*, 185 F.3d at 135-136.

The Wage and Hour Division expects overtime to be computed and paid on a pay period by pay period basis unless it is impractical to do so. This principle has been recognized by the courts. *See Reich v. Interstate Brands Corporation*, 57 F.3d 574, 576 (7th Cir. 1995)(General rule is that overtime must be paid on the regular pay day unless the collective bargaining agreement provides a different rule); *Dominici v. Board of Education*, 881 F.Supp. 315, 319 (N. D. Ill. 1995) ("Although the FLSA does not create an explicit statutory deadline for payment of overtime wages, the statute does create an implicit requirement for reasonably prompt payment."); *Mullins v. Howard County, Maryland*, 730 F. Supp. 667, 671 (D. Md. 1990) ("The Court therefore concludes that overtime pay earned by an employee during a properly selected work period, whether it be a week or a 21-day period as is involved here, must be paid in the next paycheck after the overtime is worked, unless its computation cannot practicably be accomplished by then.")

The "work week" for the Officers, who are on a 28-day pay period, is the FLSA 28-day period. The regulations provide that in these circumstances, when the word "workweek" is used in part 778, the words "work period" should be substituted. 29 C.F.R. § 553.233. Thus, under § 778.106, when the amount of the FLSA overtime payment cannot be made at the time of the regularly scheduled payday, payments are to be made as soon as is practicable thereafter.

The circuits are split on whether 29 C.F.R. § 778.106 applies where there is a timetable set forth in the CBA. In *Reich v. Interstate Brands*, 57 F.3d 574, 576 (7th Cir. 1995), the court noted that "[a]lthough the 'general rule is that overtime compensation earned in a particular workweek must be paid on the regular pay day for the period in which such work week ends', 29 C.F.R. § 778.106, nothing in the FLSA prevents a collective bargaining agreement from providing a different rule." The Third Circuit in a 2-1 decision, has come to the contrary conclusion holding that 29 C.F.R. § 778.106 is a reasonable interpretation of the FLSA. *Brooks v. Village of Ridgefield Park*, 185 F.3d 130, 135-36 (3rd Cir. 1999). The court went on to hold that because FLSA rights are nonwaivable, §778.106 is binding notwithstanding the parties' collective bargaining agreement to the contrary. *Id.* at 136. This Court must follow the Seventh Circuit's holding.[1] Because the parties have negotiated

---

[1]This Court has strong doubts about the Seventh Circuit's conclusion because as the *Brooks* decision points out at 185 F.3d at 136, the nonwaivable nature of the provisions of the FLSA is well-settled, even if obtained by negotiations for a collective bargaining agreement. See *Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728, 740-41, 101 S.Ct. 1437, 1444-45 (1981) ("Moreover, we have held that congressionally granted FLSA rights take precedence over conflicting provisions in a collectively bargained compensation agreement.) See also, *Bay*

for and agreed to the timing for such payments in their collective bargaining agreement, there is no violation of the FLSA.

However, the Court also concludes that the City's timetable for payments does not violate 29 C.F.R. § 778.106 because the timing of the overtime payment is made in a way that is "reasonably necessary for the employer to compute and arrange for payment of the amount due ..." 29 C.F.R. § 778.106. As can be seen from the chart at ¶ 12 above, the City payroll system does not wait for the next regular pay day, but issues the overtime check as soon as is practicable. This period is no later than the last day of the FLSA period following the period in which the overtime was worked.

C. **Count VI - Timeliness of Holiday Payments**

Finally, the Court holds that the City does not violate the FLSA by paying holiday pay by the 22nd day of the month following the month in which the holiday premium is earned. This time period is reasonably necessary to complete and process the holiday pay and is also provided for in the CBA.

---

*Ridge Operating Co. v. Aaron*, 334 U.S. 446, 463, 68 S.Ct. 1186, 1196 (1948) ("nothing to our knowledge in any act authorizes us to give decisive weight to contract declarations as to the regular rate because they are the result of collective bargaining."); *Jewell Ridge Coal Corp. v. Mine Workers*, 325 U.S. 161, 167, 65 S.Ct. 1063, 1067 (1945) ("employees are not to be deprived of the benefits of the Act simply because they are well paid or because they are represented by strong bargaining agents.")

11

## IV. CONCLUSION

For the foregoing reasons, pursuant to a trial on the papers, judgment shall be entered in favor of defendant, City of Chicago, and against Plaintiffs on count VI. The parties shall prepare a final judgment order which incorporates all of the Court's prior rulings and the parties' prior agreement in order that the Court may enter one final judgment order dealing with all counts of the Fifth Amended Complaint.

**SO ORDERED THIS 5th DAY OF SEPTEMBER, 2001.**

_Morton Denlow_
**MORTON DENLOW**
**UNITED STATES MAGISTRATE JUDGE**

**Copies mailed to:**

Dale D. Pierson
Jennifer L. Dunitz-Geiringer
Baum, Sigman, Auerbach,
Pierson, Neuman & Katsaros, LTD.
200 West Adams St., Suite 2200
Chicago, Illinois 60606

Counsel for Plaintiff

Mara S. Georges
Patrick J. Rocks, Jr.
Corporation Counsel
City of Chicago
30 N. LaSalle St., Suite 1020
Chicago, Illinois 60602

Counsel for Defendant

Thomas J. Pleines
General Counsel
Fraternal Order of Police
Chicago Lodge No. 7
1412 W. Washington Blvd.
Chicago, Illinois 60607

Counsel for Plaintiff

Mary L. Mikva
Abrahamson, Vorachek & Mikva
120 N. LaSalle Street
Suite 1050
Chicago, Illinois 60602

Counsel for Defendant